UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CLINTON GRANT CARR,                )
                                   )
                Plaintiff,         )    No. CV-12-0106-FVS
                                   )
          v.                       )    ORDER GRANTING DEFENDANT'S
                                   )    MOTION FOR SUMMARY JUDGMENT
                                   )
CAROLYN W. COLVIN, Commissioner    )
of Social Security,[1]             )
                                   )
                Defendant.         )
                                   )
_____   )

     **BEFORE THE COURT** are cross-motions for summary judgment noted
for hearing without oral argument.  (ECF No. 18, 23).  Attorney
Cory J. Brandt represents plaintiff; Special Assistant United
States Attorney Lisa Goldoftas represents the Commissioner of
Social Security (defendant).  After reviewing the administrative
record and the briefs filed by the parties, the Court **GRANTS**
defendant's Motion for Summary Judgment.

                          **JURISDICTION**

     Plaintiff filed applications for disability insurance
benefits (DIB) and supplemental security income (SSI) on January

_____

     [1]As of February 14, 2013, Carolyn W. Colvin succeeded
Michael J. Astrue as Acting Commissioner of Social Security.
Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin
is substituted as the defendant, and this lawsuit proceeds
without further action by the parties.  42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

10, 2009, alleging disability as of November 11, 1996 (Tr. 192-196). Plaintiff amended his alleged onset date from November 11, 1996, to October 1, 2002, at the administrative hearing (Tr. 71-72). The applications were denied initially and on reconsideration.

Administrative Law Judge (ALJ) Marie Palachuk held a hearing on September 2, 2010 (Tr. 33-82). The ALJ issued an unfavorable decision on September 22, 2010 (Tr. 16-28), and the Appeals Council denied review on December 15, 2011 (Tr. 1-6). The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 17, 2012. (ECF Nos. 2 & 5).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on December 26, 1973, and was 29 years old at the time of the alleged onset date. At the administrative hearing, plaintiff testified he has a high school education (Tr. 52) and he has had very minimal employment since his on-the-job accident in 1996 (Tr. 53). Nevertheless, as explained at the administrative hearing, plaintiff had substantial gainful employment through 2002 (Tr. 72). As a result, plaintiff amended his alleged onset date to October 1, 2002 at the administrative hearing (Tr. 72).

Plaintiff indicated he sustained a head injury in 1996 that resulted in hearing loss, sight problems and many small injuries

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

caused by neurocardiogenic syncope episodes (Tr. 53).  While Plaintiff does not have independent recollection of his experience during a syncope episode, he described the episodes as sometimes preceded by a hot flash, other times instant, and he usually finds himself on the floor afterwards feeling numb and dizzy with a need to be covered with a blanket because he occasionally loses control of his bladder (Tr. 56-57).  He sometimes needs to lie on the floor for 10 to 30 minutes before he can sit up, and, once he sits up, it sometimes takes him an hour or longer to come around (Tr. 57-58).  Plaintiff indicated he prefers to lie down for a couple of hours after an episode (Tr. 58).

Plaintiff testified he was experiencing about five syncope episodes a week following the injury (Tr. 55).  Plaintiff stated Dr. Goldberg prescribed medication for the episodes which helped for short periods of time (Tr. 55-56).  He testified "the medications definitely did seem to lower the intensity of the actual seizure, the intensity of the headaches, but they were still definitely there" (Tr. 65).  He indicated the frequency was less, about once or twice a week, during the time he was seeing Dr. Goldberg and taking the medications (Tr. 56).  At the time of the administrative hearing, plaintiff reported he was no longer taking the medications Dr. Goldberg had prescribed and the episodes had increased to two to four times per week (Tr. 56).

Plaintiff stated he also suffers two to four migraine headaches per day (Tr. 60) and has headaches that will wake him up in the middle of the night (Tr. 63).  Plaintiff also testified he had developed a tremor, which he described as eye and head twitches (Tr. 64).

1                 **SEQUENTIAL EVALUATION PROCESS**

2        The Social Security Act (the Act) defines disability as the

3 "inability to engage in any substantial gainful activity by reason

4 of any medically determinable physical or mental impairment which

5 can be expected to result in death or which has lasted or can be

6 expected to last for a continuous period of not less than twelve

7 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also

8 provides that a plaintiff shall be determined to be under a

9 disability only if any impairments are of such severity that a

10 plaintiff is not only unable to do previous work but cannot,

11 considering plaintiff's age, education and work experiences,

12 engage in any other substantial gainful work which exists in the

13 national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

14 Thus, the definition of disability consists of both medical and

15 vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156

16 (9th Cir. 2001).

17        The Commissioner has established a five-step sequential

18 evaluation process for determining whether a person is disabled.

19 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person

20 is engaged in substantial gainful activities. If so, benefits are

21 denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If

22 not, the decision maker proceeds to step two, which determines

23 whether plaintiff has a medically severe impairment or combination

24 of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

25 416.920(a)(4)(ii).

26        If plaintiff does not have a severe impairment or combination

27 of impairments, the disability claim is denied. If the impairment

28 is severe, the evaluation proceeds to the third step, which

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, plaintiff's residual functional capacity (RFC) is considered.  If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If

evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since October 1, 2002, the amended alleged onset date (Tr. 18).  At step two, she found plaintiff had severe impairments of "neurocardiogenic syncope, migraine headaches, back pain, knee contusion of the right knee, and neck pain" (Tr. 18).  At step three, the ALJ found that plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 19).

The ALJ assessed plaintiff's RFC and concluded that plaintiff could perform light exertion level work with the following limitations:  he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk for two hours and sit for six hours in an eight hour day; he can engage in all postural

activities on a frequent basis, except he can only climb stairs on
an occasional basis and never climb ladders; and he must avoid
concentrated exposure to vibration and respiratory irritants and
must avoid even moderate exposure to hazards, moving machinery or
unprotected heights (Tr. 20).  The ALJ found that plaintiff's
medically determinable impairments could reasonably be expected to
produce his alleged symptoms but that plaintiff's statements
concerning the intensity, persistence and limiting effects of
those symptoms were not credible to the extent they were
inconsistent with her RFC assessment (Tr. 22).

At step four, the ALJ found that plaintiff could not perform
his past relevant work as a shipping and receiving clerk,
lubrication servicer, tire repairer and telemarketer (Tr. 26).
However, the ALJ concluded at step five that, considering
plaintiff's age, education, work experience and RFC, and based on
vocational expert testimony, there were jobs that exist in
significant numbers in the national economy that plaintiff could
perform, including the jobs of mail clerk, survey worker and
electrical assembler (Tr. 26-27).  The ALJ thus determined that
plaintiff was not under a disability within the meaning of the
Social Security Act at any time from October 1, 2002, the alleged
onset date, through September 22, 2010, the date of her decision
(Tr. 27-28).

**ISSUES**

Plaintiff alleges the ALJ erred as follows:

1.   By improperly rejecting the opinions of his treating and
     examining medical providers;

2.   By improperly rejecting plaintiff's subjective
     complaints;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

3.   By improperly rejecting the lay witness testimony of
     Hannah Smith; and

4.   By failing to meet her burden at step five of the
     sequential evaluation process.

**DISCUSSION**

**I.   Credibility Determinations**

**A.   Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred by failing to properly consider his subjective complaints. (ECF No. 19 at 14-17). Plaintiff specifically argues that the ALJ failed to explain how his documented activities of daily living were inconsistent with his periodic syncopal episodes, which preclude sustained employment due to serious disruptions in his ability to maintain a consistent schedule. (ECF No. 19 at 16).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

As noted by the ALJ, plaintiff's daily activities were not consistent with his allegations of disabling limitations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (it is well-established that the nature of daily activities may be considered when evaluating credibility). The ALJ's decision indicates that plaintiff reported the ability to exercise two to three times per week and engage in activities of daily living including taking out the garbage, doing the dishes, laundry and some cooking, building models, going for nature walks, playing music, playing cards, watching television, reading books and going fishing (Tr. 22-23). In addition, plaintiff reported in 2005 that he had the highest grade in his medical transcription class and was on target to finish course work for a medical transcription degree in six months (Tr. 23, 327, 332).

With regard to plaintiff's specific complaint that the ALJ's RFC determination did not explain how his activities of daily living were inconsistent with his periodic syncopal episodes, the ALJ noted significant inconsistencies between plaintiff's testimony and the evidence of record regarding his activities of daily living (Tr. 22). *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986) (inconsistencies in a disability claimant's testimony supports a decision by the ALJ that a claimant lacks credibility with respect to his claim of disabling pain). Plaintiff testified to problems doing household chores and claimed he took baths because standing in a shower had proven to be dangerous because he could lose his balance (Tr. 21, 66-67). However, plaintiff indicated in his disability report that he did most household chores, except for yard work, and did his own meal preparation

(Tr. 230), medical reports reveal he exercised twice per week and did cardio workouts three times per week (Tr. 23, 25, 327, 329, 332), and plaintiff admitted his cooking habits had not changed as a result of his injury[2] (Tr. 230).  Inconsistent with plaintiff's testimony of disabling limitations, the record reflects he has engaged in numerous activities, including attending and excelling in medical transcription classes, building models, going for nature walks, playing cards, watching television, going fishing and reading books.

The ALJ also notes that plaintiff reported in an August 2003 independent neuropsychological evaluation that he quit his job at Center Partners because he was having a lot of "spells" and "missed a lot of work".  (Tr. 22, 380).  However, he then stated that he had no previous problems working as a tire sales clerk at Alton's Tires, but left the job because Center Partners offered him greater income and opportunity for advancement (Tr. 22, 380).  *See Bruton v. Massaari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that a claimant's job ends for reasons other than his alleged impairment is a valid reason to disregard a claimant's subjective complaints).

The ALJ further indicated that plaintiff stated at the administrative hearing he only used over-the-counter medications, like Tylenol and ibuprofen, to treat his impairments (Tr. 23).  Yet, plaintiff testified that the frequency of the syncopal episodes was less during the time he was seeing Dr. Goldberg and

---

[2]Plaintiff also admitted at the administrative hearing that he did not cook because he was a bad cook, not because his physical limitations prevented him from preparing meals (Tr. 67).

1   taking the medications Dr. Goldberg had prescribed (Tr. 56).  He

2   testified "the medications definitely did seem to lower the

3   intensity of the actual seizure, the intensity of the headaches,

4   but they were still definitely there" (Tr. 65).  Noncompliance

5   with medical care or unexplained or inadequately explained reasons

6   for failing to seek medical treatment cast doubt on a claimant's

7   subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v.*

8   *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  As noted by defendant,

9   although plaintiff claimed he could not afford the medication, he

10  did not previously report requiring assistance to obtain

11  prescribed medication.

12      Credibility determinations are the province of the ALJ.

13  *Russell v. Bowen,* 856 F.2d 81, 83 (9th Cir. 1988).  Where the ALJ

14  has made specific findings justifying a credibility determination,

15  and those findings are supported by substantial evidence in the

16  record, the Court's role is not to second-guess that decision.

17  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  After reviewing

18  the record, the undersigned finds that the reasons provided by the

19  ALJ for discounting plaintiff's subjective complaints are clear,

20  convincing, and fully supported by the record.  Accordingly, the

21  ALJ did not err by concluding that plaintiff's subjective

22  complaints regarding the extent of his functional limitations were

23  not fully credible in this case.

24      **B.   Lay Witness Credibility**

25      Plaintiff contends that the ALJ also erred by not making

26  proper credibility findings as to the testimony of plaintiff's

27  girlfriend, Ms. Hannah Smith.  (ECF No. 19 at 17-18).

28  *///*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).   The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness.   *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

At the administrative hearing on September 2, 2010, the ALJ indicated she was hesitant to allow Ms. Smith to testify because she had been sitting in the hearing room throughout the testimony of the medical expert, and the ALJ did not normally allow witnesses to be in the hearing room until it was their turn to testify[3] (Tr. 47-48).   The ALJ indicated she was going to allow Ms. Smith to testify, but that she did not know how much weight would be accorded to the testimony given the circumstances (Tr. 48).

Ms. Smith testified very briefly (Tr. 48-50).   She stated she has witnessed plaintiff's episodes (Tr. 48).   She indicated she last witnessed an episode "about a month ago" (Tr. 48).   Ms. Smith testified that plaintiff passes out, his body goes rigid and shakes, and, on occasion, he has lost control of his bladder and bitten his tongue (Tr. 49-50).   She described the episodes as lasting about 30 seconds to a minute, with about five to ten minutes of recovery time (Tr. 49).   Ms. Smith also filed out a Seizure Witness Questionnaire form on May 6, 2009 (Tr. 268-269).

---

[3]The ALJ's decision also reflects the ALJ's concerns regarding the lay witness's presence during the questioning of the medical expert in this case (Tr. 22).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

She indicated she witnessed plaintiff have one to two seizures per week and last witnessed a seizure by plaintiff around April 25, 2009 (Tr. 268).

The ALJ indicated that she considered Ms. Smith's testimony as well as her statements in the questionnaire (Tr. 23). The ALJ noted internal inconsistencies as to the number and frequencies of syncopal episodes and indicated that Ms. Smith is not medically trained and her opinions were likely colored by affection for plaintiff (Tr. 23). The ALJ concluded that the testimony and statement of Ms. Smith did not establish that plaintiff was disabled (Tr. 23).

The undersigned finds that the ALJ appropriately provided germane reasons for giving little weight to the testimony of plaintiff's girlfriend, Ms. Smith.

## II.   Physician Opinions

Plaintiff argues that the ALJ failed to provide convincing rationale for rejecting the opinion of his treating physician, Dr. Goldberg, and the opinion of a consultative examining physician, Dr. Casper. Defendant responds that the ALJ did not reject Dr. Goldberg's opinion and gave specific and legitimate reasons, supported by substantial record evidence, for discounting Dr. Casper's opinions. Defendant contends the ALJ properly evaluated the medical evidence of record.

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839

(9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Id*. at 1042-1043.  Greater weight must be given to the opinion of treating physicians, and in the case of a conflict "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).

**A.   Dr. Goldberg**

Harold R. Goldberg, M.D., treated plaintiff from 1995 to 2006 (Tr. 323-341).  Following a positive tilt table study, Dr. Goldberg diagnosed plaintiff with syncope/seizure, probably secondary to episodes of neurocardiogenic syncope, and started plaintiff on medication for treatment (Tr. 404).  In April 2003, Dr. Goldberg wrote that the tilt table test would predict that plaintiff should do well on medication, but that the test "is not absolutely predictive in all cases as to how one will do clinically" (Tr. 407).  Dr. Goldberg explained that, while rare, probably about five to 10 percent of cases still have syncopal spells in real world situations (Tr. 407).

On July 28, 2004, plaintiff reported he had been experiencing one syncopal episode about every two weeks (Tr. 336).  As a result, Dr. Goldberg recommended increasing plaintiff's medications (Tr. 337).  On November 2, 2004, plaintiff reported to Dr. Goldberg that he was feeling "reasonably well" and had only had two or three episodes since the July 2004 visit (Tr. 334). Plaintiff indicated he was doing well overall and had been exercising two times per week (Tr. 334).

On March 17, 2005, plaintiff reported the week prior had been difficult, with several syncopal spells in conjunction with a significant flu-like illness (Tr. 332).  He indicated that, prior to that, he had only had maybe one or two episodes since the November 2004 visit (Tr. 332).  It was noted plaintiff was attending college, studying to be a medical assistant, and had the highest grade in his class (Tr. 332).  Plaintiff reported he exercised two times per week and did cardio workouts three times a week (Tr. 332).  Dr. Goldberg indicated plaintiff was doing well, except for the flu-like illness, and would not recommend increasing plaintiff's medications at that time (Tr. 333).

On May 18, 2005, Dr. Goldberg noted he had met with plaintiff's attorney and career counselor (Tr. 331).  It was reported that plaintiff had been missing school in the last several weeks.  The counselor informed Dr. Goldberg that it had been reported that plaintiff may have been in bars late at night and then did not show up for class the next day (Tr. 331).

On June 14, 2005, plaintiff indicated he had experienced two to three episodes of neurocardiogenic syncope per month since he last saw Dr. Goldberg in March, the last occurring two weeks prior

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

to the appointment (Tr. 329).  It was again reported that plaintiff was studying medical terminology for transcription and had the highest grade in his class, he exercised two times per week, and he was doing cardio workouts three times per week (Tr. 329).

On August 10, 2005, plaintiff reported to Dr. Goldberg that he was experiencing two syncopal spells per month on average (Tr. 326).  Dr. Goldberg recommended an increase in dosage of medication to treat the syncope.  At that time, Dr. Goldberg also signed a form for plaintiff's L&I claim which indicated a 40% bodily impairment (Tr. 326).

Dr. Goldberg's notation of a 40% bodily impairment rating on an L&I claim form (Tr. 326) does not equate to a finding of complete disability as defined by the Social Security Act.  It is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund*, 253 F.3d at 1156.

The ALJ did not reject Dr. Goldberg's opinions.  To the contrary, the ALJ credited the reports of Dr. Goldberg to conclude that plaintiff only experienced syncopal episodes approximately two times a month and that plaintiff had the ability to participate in several activities (Tr. 25).  As indicated by the ALJ, Dr. Goldberg's reports revealed that plaintiff stated he would like to retrain for a new job, exercised two times per week, engaged in "cardio workouts" three times a week and was finishing a medical transcription degree and had the highest grade in the class (Tr. 23).  Dr. Goldberg's reports indicate that while

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

plaintiff was receiving treatment by Dr. Goldberg and on medication for his neurocardiogenic syncope, plaintiff was only experiencing syncopal episodes about two times a month and was functioning reasonably well (Tr. 25).  The ALJ's RFC determination accounts for the information provided in Dr. Goldberg's reports.

**B.   Dr. Casper**

John B. Casper, M.D., completed a consultative examination of plaintiff on August 14, 2009 (Tr. 414-417).  Plaintiff reported that despite the fact that medication had slowed the syncopal episodes to about one to two per week, he had been off of the medications for the last four to five years (Tr. 414).  He indicated he currently experienced three or four syncopal episodes per week and at least one migraine headache per day (Tr. 414-415). Dr. Casper opined that plaintiff would not be expected to have difficulty with work-related activity between episodes, but, due to the syncopal episodes occurring at the frequency of three or four times per week, plaintiff would be expected to have intermittent difficulty with all work-related activities (Tr. 417).  Dr. Casper indicated that due to the frequency of the syncopal episodes, it was not likely that plaintiff would be able to maintain full-time employment (Tr. 417).

The ALJ accorded little weight to Dr. Casper's opinion because it was inconsistent with the record as a whole and based predominately on plaintiff's subjective reports[4] (Tr. 25).  As

--------

[4]Since plaintiff was properly found by the ALJ to be not entirely credible, *see supra*, the ALJ appropriately accorded little weight to a medical report based primarily on his subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

noted by the ALJ, plaintiff had reported to other medical treatment providers that he was only experiencing about two syncopal episodes per month, not three or four episodes per week, and the record reveals plaintiff had the ability to participate in several activities, including cardiovascular exercise three time per week (Tr. 25). In addition, other medical evidence of record, as outlined by the ALJ (Tr. 24-25) and discussed below, contradict Dr. Casper's opinion that plaintiff is not able to work, given the frequency of his syncopal episodes.

On July 10 and 11, 2003, plaintiff underwent an independent medical examination for purposes of a work's compensation claim (Tr. 24, 365-378). Plaintiff reported the syncopal episodes diminished to one or two per month since he began taking medication for the issue, and he had not had an episode since May 24, 2003 (Tr. 369). Neurosurgeon Henry Gerber, M.D., opined that while plaintiff's history of syncopal episodes is a serious barrier, plaintiff would be able to work in jobs that did not include dangerous machinery, heights and climbing ladders (Tr. 24, 374). Cardiologist Robert Thompson, M.D., opined that plaintiff would be able to work at jobs that did not place him in precarious positions such as office work or work that guaranteed that he remain at ground level and was not working with heavy machinery (Tr. 24, 376).

---

a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r. of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

On August 16, 2003, plaintiff underwent an independent medical examination with Allen D. Bostwick, Ph.D., for purposes of a work's compensation claim (Tr. 24, 379-395).  Dr. Bostwick opined that plaintiff presented with no restriction or limitation in pursuing gainful employment on a full time basis in his usual and customary occupation (Tr. 394).

On November 20, 2006, plaintiff underwent a consultative neurological examination with James Y. Lea, M.D. (Tr. 24, 343-345).  It was noted that plaintiff could no longer afford the medications prescribed by Dr. Goldberg and, for this reason, he was having more episodes (Tr. 344).  Dr. Lea opined that plaintiff could not work in a situation where he would be driving equipment, operating equipment or working at heights, but there was no reason plaintiff would not be able to engage in reasonable employment from a neurological standpoint (Tr. 345).

On September 2, 2009, reviewing state agency physician Ward E. Dickey, M.D., opined that plaintiff was capable of performing light exertional level work with certain postural and environmental limitations (Tr. 418-425).  He noted that plaintiff has not reported seeking assistance to obtain medications he has previously been prescribed, nor does he report having sought medical care at a free clinic, health department or emergency room to alleviate pain or reduce syncope episodes (Tr. 423).

At the administrative hearing held on September 2, 2010, medical expert Minh Vu, M.D., testified regarding plaintiff's condition (Tr. 37-52).  Dr. Vu testified that environmental work-related limitations, such as no driving or concentrated exposure to unprotected heights or moving equipment, and postural

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

limitations, including no climbing of ropes, scaffolds and ladders, were appropriate for plaintiff.  However, Dr. Vu opined that plaintiff would otherwise be capable of performing work at the medium exertional level (Tr. 44-45).

Outside of Dr. Casper, no other medical professional of record has opined that plaintiff could not work due to his syncope episodes.  The medical evidence of record, other than the report of Dr. Casper, supports the ALJ's determination that plaintiff retained the RFC to perform light exertion level work with certain postural and environmental limitations.

Based on the foregoing, the undersigned finds the reasons given by the ALJ for according little weight to Dr. Casper's opinions were specific and legitimate and supported by substantial record evidence.  Therefore, the ALJ did not err by according Dr. Casper's opinion little weight in this case.

**III. Step Five**

The ALJ presented a hypothetical to the vocational expert which included all of the limitations set forth in her RFC assessment.  Because the undersigned finds that the ALJ's evaluation of the evidence is appropriate and the ALJ's RFC determination is supported by substantial evidence, plaintiff's argument that the hypothetical presented to the vocational expert was incomplete (ECF No. 19 at 19-20) is without merit.  The ALJ properly relied on the vocational expert's testimony to conclude, at step five, that there were jobs that exist in significant numbers in the national economy that plaintiff could perform despite his limitations.  The ALJ's step five determination is supported by substantial evidence and free of legal error.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court determines that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (**ECF No. 23**) is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment (**ECF No. 18**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

**DATED** this   16th   day of May, 2013.


                    S/Fred Van Sickle
                     Fred Van Sickle
              Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22